533 So.2d 1174 (1988)
STRITON PROPERTIES, INC., Appellant,
v.
The CITY OF JACKSONVILLE BEACH, Florida, and the Community Redevelopment Agency of the City of Jacksonville Beach, Florida, Appellees.
No. 87-60.
District Court of Appeal of Florida, First District.
September 9, 1988.
Rehearing Denied December 8, 1988.
*1175 Alan C. Sundberg and Cynthia S. Tunnicliff of Carlton, Fields, Ward, Emmanuel, Smith, Cutler & Kent, P.A., Tallahassee, and Peter J. Winders and Donald E. Hemke of Carlton, Fields, Ward, Emmanuel, Smith, Cutler & Kent, P.A., Tampa, for appellant.
Karen K. Cole of Boyd & Jenerette, P.A., Jacksonville, for appellee City of Jacksonville Beach, Fla.
Judith S. Beaubouef and William S. Graessle, Mahoney, Adams, Milam, Surface & Grimsley, P.A., Jacksonville, for appellee Community Redevelopment Agency of the City of Jacksonville Beach, Fla.
ZEHMER, Judge.
Striton Properties, Inc. (Striton) appeals the dismissal of Counts I through IV of its Second Amended and Supplemented Complaint against the City of Jacksonville Beach, Florida (the City) and the Community Redevelopment Agency of the City of Jacksonville Beach, Florida (the Agency). The lower court dismissed Counts I through IV on the ground that the conduct *1176 alleged therein is "not actionable." We affirm.
This dispute evolved from efforts of the City, the Agency, and Striton to implement the Community Redevelopment Act of 1969 ("the Act"),[1] a brief overview of which is necessary to understand this case. The Act provides counties and municipalities with a comprehensive system for the redevelopment of blighted and slum areas when such redevelopment is necessary in the interest of the public health, safety, morals, or welfare of the residents of the county or municipality. §§ 163.335, 163.355, Fla. Stat. (1977). The legislature enacted the provisions of Chapter 163 because it found the redevelopment of slum and blighted areas to be a "necessity in the public interest"; in furtherance of this interest, it enacted provisions conferring powers for public uses and authorizing the expenditure of public money and the exercise of the powers of eminent domain and police power. § 163.335(3), Fla. Stat.(1977). Upon determining that such an area exists within the county or municipality and that redevelopment of that area is necessary, the county or municipality is authorized to create a community redevelopment agency to carry out the purposes of the Act. § 163.356(1), Fla. Stat. (1977). Such an agency is vested with the "powers necessary or convenient to carry out and effectuate the purposes and provisions" of the Act; however, certain powers are specifically reserved to the governing body of the county or municipality, including the "power to grant final approval to community redevelopment plans and modifications thereof." § 163.358, Fla. Stat. (1977). The agency may prepare, or cause to be prepared, a community redevelopment plan, or any person or agency, public or private, may submit such a plan to the agency. § 163.360(3), Fla. Stat.(1977). Once the agency has decided upon a plan to recommend for approval, it must submit that plan to the governing body[2] who, after holding a public hearing on the project, may approve the project if it meets certain statutory requirements. §§ 163.360(4), (6), Fla. Stat. (1977). Upon the governing body's approval of the redevelopment plan, the plan is deemed to be in full force and effect and the county or municipality may then cause the agency to carry out the plan or modification in accordance with its terms. § 163.360(8), Fla. Stat. (1977).
Against that setting, we now move to the relevant and material facts of this case as revealed in the complaint and attached documents. In 1977, pursuant to the Act, the City of Jacksonville Beach, Florida designated an area within the City as a community redevelopment area (the Area).[3] In 1978, the City created the Community Redevelopment Agency of the City of Jacksonville Beach, Florida to plan and carry out redevelopment of the Area. The Agency requested that developers submit proposals for redeveloping the Area. Striton Properties, Inc. submitted such a proposal and was selected as master developer.
In January 1981, Striton and the Agency executed the Planning and Development Agreement confirming Striton's appointment as master developer of the Area and outlining the procedures Striton and the Agency were to follow in preparing a redevelopment plan. The Planning and Development Agreement provided, inter alia, that within 120 days of approval of the Planning and Development Agreement, Striton was to submit a conceptual development plan to the Agency for its approval; Striton and the Agency were immediately to begin preparing a community redevelopment plan, which was to be completed within 180 days of approval of the conceptual plan; and within 90 days of the City's approval of the community redevelopment plan, Striton was to submit to the Agency its proposed final development agreement. The Planning and Development Agreement also provided that, in the event approval of the plans was not obtained or the agreement was terminated, the Agency would *1177 reimburse Striton for costs, expenditures and advances up to a maximum of $250,000.00.[4] This agreement was signed by the Agency and Striton; it was not signed by the City.
In accordance with the Planning and Development Agreement, Striton prepared the Conceptual Plan and submitted it to the Agency and the City for approval.[5] Striton and the Agency then prepared the Community Redevelopment Plan. The City declined to approve the plan after a public hearing held in December 1982. After revision and resubmission of the plan dated April 4, 1983, the City approved the plan by resolution on that same date. However, the resolution approving the revised Community Redevelopment Plan was amended on April 18, 1983 to direct that the Agency initially undertake to redevelop only "Phase I" of the Area. The Agency thereupon advertised for development bids specifically for Phase I. Striton, while reserving its alleged rights under the Planning and Development Agreement to develop the entire Area, submitted to the Agency a bid for developing Phase I. The Agency accepted this bid.
Striton and the Agency then negotiated the Disposition and Development Agreement for the Jacksonville Beach Community Redevelopment Area (the Disposition and Development Agreement). The stated purpose of the Disposition and Development Agreement was to effectuate the Community Redevelopment Plan by providing for the disposition and development of real property in the Phase I development area. Upon approving the Disposition and Development Agreement, the Agency notified the City that it intended to execute the Disposition and Development Agreement upon the expiration of 30 days. The City, however, disapproved of the Disposition and Development Agreement, had a separate agreement prepared, and directed that the new agreement be substituted for the Disposition and Development Agreement. The Agency refused to accept the substitute agreement.[6] Upon such refusal, the City requested the Agency members' resignations and removed from office those members who refused to resign. The City then adopted a resolution revoking its earlier approval of the Community Redevelopment Plan covering Phase I.
Initially, Striton filed a complaint solely against the City seeking a declaratory judgment declaring the City's resolution revoking its approval of the Community Redevelopment Plan invalid, void, and unconstitutional, and declaring that Striton had vested rights to develop the Area. Striton later filed an "Amended and Supplemented Complaint," adding the Agency as a defendant and seeking, in addition to the declaratory judgment, injunctive relief, specific performance or damages for breach of contract, and damages for tortious interference with a contract or prospective economic advantage. The City and the Agency moved to dismiss this complaint on the ground, inter alia, that documents which formed the basis for the action, the Planning and Development Agreement and two City Resolutions, were not attached to nor incorporated in the complaint. The court ordered Striton to either file these documents or suffer dismissal of its action. Striton complied with the court's order, but maintained that it was not relying on the Planning and Development Agreement as the basis for its claims.
Upon reviewing all the documents, the lower court dismissed the complaint without prejudice on the ground that the conduct alleged in the complaint  the City's refusal to execute the Disposition and Development Agreement  was what the City had a right to do pursuant to the Planning and Development Agreement.[7] Striton *1178 then filed the "Second Amended and Supplemented Complaint." The court dismissed with prejudice the first four counts of this complaint because they were virtually identical to the counts contained in the previously dismissed complaint.[8] Striton appeals the dismissal of these four counts, arguing that "the circuit court erred in concluding that the City had the right to terminate pursuant to the Planning and Development Agreement."
Our review of the trial court's dismissal of Counts I through IV of the complaint on the ground that the conduct alleged therein is not actionable must, necessarily, begin with the Act, as the Act provides a framework within which community redevelopment projects must, as a matter of law, be performed. The Act states that "[t]he community redevelopment agency shall submit any community redevelopment plan it recommends for approval ... to the governing body." § 163.360(4) (emphasis added). The governing body is then to proceed with a hearing on the proposed project and "[f]ollowing such hearing, the governing body may approve [the] community redevelopment project and the plan... ." § 163.360(6) (emphasis added). Although the powers of a community redevelopment agency include all those "necessary or convenient to carry out and effectuate the purposes and provisions" of the Act, "[t]he power to grant final approval to community redevelopment plans and modifications thereof" is expressly reserved to the governing body of the county or municipality. § 163.358, Fla. Stat. (1977). These statutory provisions make clear that the legislature vested the City with the exclusive authority to grant final approval to any community redevelopment plan. The Act accorded the City no power to delegate or divest itself of such authority, and accorded the Agency no power to assume such authority.
Striton argues that it has vested property rights in the redevelopment of the Area that arose by virtue of the Agency's advertising for redevelopment bids, Striton's submission of an offer, the Agency's acceptance of the offer by resolution, Striton and the Agency's negotiation of the specific wording of the Disposition and Development Agreement, and the Agency's approval of that agreement by resolution. We cannot construe the Disposition and Development Agreement, which represents the culmination of these interactions, as giving Striton any vested property rights because, in fact, the agreement was never executed by the City, the Agency, or Striton. Furthermore, even if we could construe this agreement and the interactions leading up to it as giving Striton vested property rights, they could not divest the City of its exclusive power to grant final approval to the community redevelopment plans.
The trial court found that the Planning and Development Agreement conferred upon the City the right to refuse to execute the "Final Redevelopment Agreement"; thus, the court found that the City's conduct of refusing to execute the Disposition and Development Agreement is not actionable because the City was merely doing what it had a right to do pursuant to the Planning and Development Agreement. Striton steadfastly adheres to its position that the Planning and Development Agreement is extraneous to its cause of action and, if relevant at all, is relevant only as background evidence. However, examination of the complaint at issue[9] reveals Striton's allegation in paragraph 5 that the Planning and Development Agreement "vested Striton with exclusive development rights in the Area" and that "[t]he City was not a party to the Agreement and had no power to terminate the Agreement." Striton alleges in paragraph 6 that, pursuant to the Planning and Development Agreement, it "expended considerable time, *1179 effort and money in the preparation and development of the plan." That agreement is, obviously, central to Striton's alleged causes of action.
Fla.R.Civ.P. 1.130 states that all documents upon which an action may be brought shall be attached to the pleading and any exhibit so attached shall be considered a part of that pleading for all purposes. The plain language of the complaint shows that the Planning and Development Agreement is critical to Striton's claims that it has "vested rights" that the City and Agency destroyed, and that the destruction of these rights constituted an unconstitutional taking and tortious interference with a contractual relationship or prospective economic advantage. Thus, the trial court correctly ordered Striton to file the Planning and Development Agreement and correctly considered this agreement in ruling on the motion to dismiss. See Woolzy v. Government Employees Insurance Co., 360 So.2d 1153 (Fla. 3d DCA 1978).
Upon examining the complaint and the Planning and Development Agreement, in toto, we understand Striton's reluctance to file the Planning and Development Agreement. Striton alleged in paragraph 11 of the complaint that the City retained or reserved no right, power or authority to approve or disapprove the Disposition and Development Agreement. But paragraph 2(e) of the Planning and Development Agreement expressly states:
[i]n the event the city does not approve the Final Development Agreement within 45 days from the date of agency approval, either party may terminate this agreement by written notice to the other party
...
We agree with the trial court that the Disposition and Development Agreement is the "Final Development Agreement" contemplated by the Planning and Development Agreement. We do so because the Disposition and Development Agreement embodies in "final" written form, all of the plans, agreements, duties and rights of each of the parties to the project.
Under Florida law, if an attached document negates a pleader's cause of action, the plain language of the document will control and may be the basis for a motion to dismiss. Health Application Systems, Inc. v. Hartford Life and Accident Insurance Company, 381 So.2d 294, 297 (Fla. 1st DCA 1980). Paragraph 2(e) of the Planning and Development Agreement negates the inconsistent allegation in Striton's complaint that the City had no right, power or authority to disapprove the Disposition and Development Agreement, and, in accordance with the law as stated in Health Application Systems, Inc., the provisions of paragraph 2(e) control. Thus, the lower court was correct in ruling that the City was only doing what it was authorized by the Planning and Development Agreement to do in disapproving the plan and terminating the agreement.
This conclusion is bolstered by the provisions in paragraph 3 of the Planning and Development Agreement that authorized Striton, in the event the plan was not approved or the agreement was terminated, to obtain reimbursement for its expenses in preparing and developing the plan. Paragraph 3 states that its reimbursement provisions are "[i]n consideration of the time, expenses and costs incurred and the advancement of funds by the Developer in preparation of the Community Redevelopment Plan and the studies in connection therewith... ."
The order dismissing Counts I through IV of the Second Amended and Supplemented Complaint with prejudice is AFFIRMED.
SHIVERS and WIGGINTON, JJ., concur.
NOTES
[1] Chapter 163, Part III, Florida Statutes (1977).
[2] § 163.340(3) defines "governing body" as "the council or other legislative body charged with governing the county or municipality."
[3] The name given to this redevelopment is "Jacksonville By The Sea."
[4] These provisions are located in paragraph 3 of the Planning and Development Agreement.
[5] Paragraph 6 of the complaint alleges that the Agency and the City approved the conceptual plan. It fails, however, to allege the manner in which this plan was approved and we can find no evidence of such approval in the record.
[6] Striton also found this substitute agreement unacceptable.
[7] The court further stated that Striton's sole remedy lay in paragraph 3 of the 1981 Agreement, which provides for reimbursement of costs and expenses.
[8] Count V, asserted as an alternative to the first four counts, requests reimbursement of "expenditures and advances" in accordance with paragraph 3 of the 1981 Agreement. The court dismissed Count V, without prejudice, for failure to adequately set forth the elements of the cause of action.
[9] The Second Amended and Supplemented Complaint.